UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOSE ANTONIO CABALLERO CANDIA,

              Petitioner,

v.

KEVIN RAYCRAFT, et al.,

              Respondents.

_____/

Case No. 1:26-cv-1086

HON. ROBERT J. JONKER

## **OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the Northlake Processing Center in Baldwin, Michigan, initiated this action by filing a counseled petition for a writ of habeas corpus under 28 U.S.C. § 2241. (ECF No. 1, PageID.1.) For the following reasons, the Court will deny the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## **BACKGROUND**

Petitioner is a native and citizen of Mexico. (ECF No. 1, PageID.4.). He entered the United States in 2000, when he was 6 years old. (*Id.*). And he has remained in the United States since that time. (*Id.*).

In 2017, Petitioner applied for, and was granted, DACA status through February 1, 2020. (ECF No. 6-1, PageID.38). At the time Petitioner's DACA status expired, he was detained at Kent County Jail on pending controlled substance charges. (*Id.*). Immigration officials later discovered that. (*See id.*). So ICE officials took Petitioner into ICE custody while he was detained in Kent County and shortly thereafter, instituted removal proceedings. (*Id.*). While in ICE custody,

Petitioner again applied for DACA. (*Id.* at PageID.39). But his application was denied on June 24, 2020. (*Id.*). A few days later, on June 26, 2020, an immigration judge ordered Petitioner removed to Mexico. (*Id.*). On appeal, the BIA affirmed the removal order.[1] (*Id.*).

While Petitioner's appeal was pending with the BIA, DHS decided to release Petitioner back into the United States on an Order of Release on Recognizance. (*Id.*). Petitioner alleges that before his current detention, he had been "complying with the conditions of his supervised release." (ECF No. 1, PageID.2). However, while on release, Petitioner had multiple run-ins with the law. In August 2021, he was convicted on a Controlled Substance Possession offense. (*Id.* at PageID.40). In March 2023, he was arrested for Assault with a Dangerous Weapon.[2] (*Id.*). And in November 2024, he was convicted on a Disturbing the Peace offense. (*Id.*).

Ultimately, on March 31, 2026, ICE agents encountered Petitioner during an enforcement operation and arrested him to "execute his final order of removal." (*Id.* at PageID.41). The next day, Petitioner filed this habeas petition, challenging his detention. (ECF No. 1). In an order entered on April 3, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (ECF No. 3).  Respondents moved to seal their response, which they filed on April 13, 2026 (ECF No. 5, 6).[3] Petitioner filed his reply on April 16, 2026 (ECF No. 8).

---

[1] Petitioner has filed multiple other motions with the USCIS, which remain pending. For example, in May 2021 and August 2022, he again applied for DACA. Both those motions are pending. He also filed Petitioner for U Nonimmigrant Status (i.e. a "U-visa") in March 2024, which remains pending. And in May 2025, he received a "bone fide finding" from USCIS that provided "Deferred Action" status. But ICE is currently working with USCIS to determine whether his "Deferred Action" finding will be cancelled due to his criminality and other misrepresentations that he has made. (ECF No. 6-1, PageID.40-41).

[2] The charge in this case was ultimately dismissed. (ECF No. 6-1, PageID.40).

[3] Respondents also filed a proposed stipulation to extend the deadline for their response. (ECF No. 4). Because the parties agreed to extend the deadline for a response, that stipulation is **GRANTED**.

**HABEAS CORPUS LEGAL STANDARD**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025).

**DISCUSSION**

The parties agree that Petitioner is subject to a final order of removal. Petitioner contends that Respondents have violated his right to due process by improperly re-detaining him while he was on supervised release. He asserts that immediate release is warranted. The Court, however, does not have jurisdiction to review the bulk of Petitioner's claims. After an alien has been ordered removed from the United States, the Attorney General has broad discretion in determining how to execute removal. And the INA makes clear that federal courts do not have jurisdiction to review the Attorney General's discretionary decisions. Under well-established Supreme Court precedent, Petitioner may challenge the constitutionality of post-removal detention based only on the length of time in which he has been detained. *See Zadvydas v. Davis*, 533 U.S. 678 (2001). And under

---

Likewise, because Respondents response may contain confidential information related to his U-visa application, their unopposed motion to seal (ECF No. 5) is also **GRANTED**.

3

those well-established principles, Petitioner's detention has not yet reached a constitutionally problematic duration. So Petitioner's habeas petition must be denied.

*1. Jurisdiction over Challenges to Discretionary Agency Decisions*

Through the INA, Congress has given the Attorney General broad grants of discretion. Section 1226(a), for example, authorizes the Attorney General to detain a noncitizen during removal proceedings and to decide whether release on bond or conditional parole is appropriate. Likewise, in Section 1231—the statutory provision at issue here—Congress granted the Attorney General discretion to determine whether an alien should remain in detention while the government works towards executing a final removal order or whether the alien should instead be released on an order of supervision. *See* 8 U.S.C. § 1231(a)(1)(C), (1)(6); *C.M. v. Maples*, No. 4:25-cv-198, 2025 WL 3091623, at *2 (S.D. Ind. Nov. 5, 2025) (noting that this decision is at the AG's "discretion"). In general, then, decisions related to detention or release are in the Attorney General's hands.

In the same vein, although Section 1231 provides some instruction for when supervised release pending the execution of a removal order may be appropriate, it does not prescribe why, or how, the government may revoke that release. Rather, Section 1231 delegates authority to the Attorney General to promulgate regulations that clarify the post-removal-order supervised release process. *See* 8 U.S.C. § 1231(a)(3). As such, the Attorney General has discretion to determine the specific conditions imposed during a person's supervised release, what kind of supervised release violations or other circumstances warrant revocation, and how the government may go about revoking person's supervised release. Under the INA, the government also has discretion in applying those regulations and rules to individualized cases. *See, e.g.*, 8 C.F.R. § 241.4 (providing decision to revoke supervision is in the immigration official's "decision"). Ultimately, Congress

4

intended for the Attorney General to figure out the ins-and-outs of executing an alien's removal order, from final order to removal.

When, however, the Attorney General makes a discretionary judgment call—such as whether to re-detain an alien on supervised release to execute their removal—the INA instructs that federal courts do not have jurisdiction to review that decision. In Section 1226(e), for example, the INA restricts judicial review of such discretionary judgments, providing that courts may not "set aside" decisions regarding detention, release, or bond.  *Id.* § 1226(e). Likewise, Section 1252(a)(2)(B) generally provides that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security" that they make in their "discretion."

These jurisdiction-stripping provisions do not mean that the Court may not review the constitutionality of the overall statutory scheme Congress has created. *See Demore v. Kim*, 538 U.S. 510, 517 (2003). Nor does it mean that the Court may not consider whether, in certain cases, the combined effect of the Attorney General's discretionary decisions results in a violation of a petitioner's constitutional rights. *See Jennings v. Rodriguez*, 583 U.S. 281, 312 (2018). But they do reflect Congress's judgment that it is best to entrust the Executive with the responsibility of making the day-to-day determinations that structure the detention process and to insulate those determinations from judicial second-guessing. So long as the Executive's exercise of that discretion conforms to the statutory scheme and does not result in constitutional violations, the Court will not second guess Congress's decision to grant the Executive such discretion.  Thus, it is not the Court's role to substitute its own judgment for that of Congress, the Immigration Judge, the BIA, or DHS.

Here, Petitioner is challenging the government's decision to re-detain him after his supervised release—a quintessential "discretionary judgment" that the Attorney General is authorized to make. The Attorney General's regulations are clear: "[r]elease may be revoked in the *exercise of discretion* when, in the opinion of the revoking official. . . [i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien; or . . . any other circumstance, indicates that release would no longer be appropriate. 8 C.F.R. § 241.4 (emphasis added). It was therefore the immigration official's role to evaluate Petitioner's circumstances and determine, from those circumstances, whether detention is again necessary to execute Petitioner's removal. The Court has no role in this process. So the Court will not flyspeck the immigration official's decision to revoke Petitioner's release, as the Petitioner asks. Rather, the proper avenue for this kind of challenge is through the BIA appeal system. Accordingly, to the extent Petitioner asks the Court to review whether his revocation of his release was proper, his challenge is denied.

### 2.  *Petitioner's Challenge Fails Under* Zadvydas

That said, Petitioner is not without other avenues for relief. In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court indicated that if an alien remains in post-removal detention indefinitely, their detention may become unconstitutionally permissible. Here, however, Petitioner's detention has yet reached that threshold.

Under Section 1231, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney

General shall detain the alien." *Id.* § 1231(a)(2)(A). And under 8 U.S.C. § 1231(a)(6), the alien "may be detained beyond the removal period" in certain circumstances.

In *Zadvydas*, the Supreme Court considered whether 8 U.S.C. § 1231(a)(6) authorizes indefinite detention when no other country is willing to take a person who has been ordered removed.  533 U.S. at 682.  In answering that question, the Court noted that the purpose of the statute was to assure the "alien's presence at the moment of removal." *Id.* at 699.  Therefore, the Court concluded that for post-removal-order detention to be authorized by the statute, the removal itself must be reasonably foreseeable. *Id.*  The Court indicated that this inquiry would vary from case to case and that there was no specific point in time at which the detention became constitutionally impermissible. *Id.*  Still, to assist the lower courts in making the difficult judgment calls about when the detention was no longer authorized by the statute, the Court designated six months as a "presumptively reasonable period of detention." *Id.* at 701.  Even after six months has passed, though, the Court made clear that the alien may continue to be held unless the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Under this framework, it is the petitioner's burden to come forward with evidence showing that removal is not significantly likely to occur sometime soon. *Id.*  Only after the petitioner has come forward with such evidence does the burden flip to the respondents, who must then show evidence that the removal is, in fact, reasonably foreseeable. *See Abdalla v. Johnson*, No. 16-14422, 2017 WL 345731, at *4 (E.D. Mich. Jan. 24, 2017) (rejecting Petitioner's claim that detention of more than a year violated *Zadvydas* when the petitioner "provide[d] no evidence" that removal was unlikely to occur in the near future).

Here, the circumstances do not yet indicate that Petitioner's removal is unlikely to occur soon. Petitioner has been detained since March 31, 2026. At this point, then, he been detained for only three months—a period well within *Zavydas*'s "presumptively reasonable period of detention." 533 U.S. at 701. Nothing about Petitioner's current circumstances overcomes this presumption. Rather, they reinforce that Respondents intend to remove Petitioner as soon as possible. Respondents re-detained Petitioner in March "to execute his final order of removal." (ECF No. 6-1, PageID.41). They also "intend[] to remove [Petitioner] to Mexico in the near future." (*Id.*). And they do not need travel documents to do so. (*Id.*). All in all, the circumstances indicate that Respondents are actively trying to remove Petitioner.

True, some procedural barriers may stand in the way of removal. For example, Defendant may have received a "deferred action" ruling from an immigration judge, which could temporarily prevent removal. And he also may have pending applications for DACA status and a U-visa. But at this time, neither of these facts sufficiently show that removal is not reasonably foreseeable.

For one, the "filing" of a U-visa application "has no effect on ICE's authority to execute a final order." 8 C.F.R. § 214.14(c)(ii). "Petitioner can still pursue his U-Visa petition from outside the United States." *Ramirez-Campos v. Bondi*, No. 23-849, 2025 WL 545717, at *1 (9th Cir. Feb. 19, 2025) (citing 8 C.F.R. § 214.14(c)). So because Petitioner's U-visa application does not impact Respondents' ability to remove him, it in no way limits the foreseeability of prompt removal. *Cf. Singh v. ICE Field Off. Dir.*, No. 2:24-cv-705, 2025 WL 746295, at *9-10 (W.D. Wash. Feb. 14, 2025) (concluding that the presence of a U-visa application does not show that a petitioner's "removal is not significantly likely to occur in the reasonably foreseeable future").

Nor does "deferred action" status, alone, render Petitioner's removal unforeseeable. *See Al Nassar v. Rhoney*, No. 26-cv-311, 2026 WL 1800891, at *6 (W.D.N.Y. June 23, 2026) ("[T]he

simple fact that Al Nassar has been granted deferral of removal, in and of itself, does not mean that Al Nassar may not be removed in the foreseeable future."); *Espinoza-Sorto v. Agudelo*, No. 1:25-CV-23201-GAYLES, 2025 WL 3012786, at *7 (S.D. Fla. Oct. 28, 2025) (rejecting the petitioner's contention that "there is no significant likelihood of his removal in the reasonably foreseeable future" even though "he has deferred action status"). In fact, Respondents are actively seeking cancellation of that order based on Petitioner's "misrepresentations and criminality." (ECF No. 6-1, PageID.41). If Respondents succeed, they would be free to remove Petitioner. So Petitioner's deferred action status also does not overcome *Zadvydas*'s presumption in this case.

The Court recognizes that continued detention may, over time, come to resemble the kind of indefinite confinement that *Zadvydas* may not permit. "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely [has] to shrink." *Zadvydas*, 533 U.S. at 701. Courts applying this principle recognize that even where the Government continues to pursue removal in good faith, the passage of time can eventually erode the reasonableness of continued detention. *See Martinez*, 968 F.3d at 565 (explaining that prolonged detention may become unreasonable if the petitioner later demonstrates that removal is no longer likely). Here, however, the Court is not yet faced with that situation.

Accordingly, the petition will be **DENIED WITHOUT PREJUDICE**. Should the Government's efforts to secure removal ultimately stall or fail to bear fruit, Petitioner remains free to file a new petition asserting that continued detention is no longer reasonable.

**<u>Conclusion</u>**

For the reasons discussed above, the Court will enter a judgment dismissing Petitioner's

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.


Dated:    July 6, 2026                         /s/ Robert J. Jonker
                                                    ROBERT J. JONKER
                                                    UNITED STATES DISTRICT JUDGE